The United States Court of Appeals for the Ninth Circuit is now in session. Good morning. I'm Judge Gould presiding today and I'm delighted to be sitting with my colleague from the circuit, Judge Rawlinson. And Judge Rawlinson and I are also very grateful to our visiting judge, Judge Zips, who kindly took time off her busy docket in Arizona to help us out with our work. We have a lot of cases to be argued today, so if the if the could stop before all the time's gone. However, as a pandemic bonus, because we're grateful to you showing up to argue remotely, if you ask me for a couple of minutes extra time, you will get it. Without further ado, we can start on the first case on our argument calendar, which is Ramirez Barragan, and I apologize if I'm mispronouncing, versus Garland. And for the petitioner, we have Omar Christian. And for the government, we have Kathleen Volker. So Mr. Christian, please proceed. The case is set for 10 minutes per side. So if you can stop, if you want to make rebuttal, you can stop before all your time's gone. That'll be of help to us. Good morning, Your Honor. May I please the court? Yes, please proceed. So basically, Ramirez... Could you introduce yourself for the record, please? Good morning, Your Honor. My petitioner, Ramirez. Okay. May I please the court? Yes. All right. So basically, the petitioner did a case on the IJ level, and he filed for asylum withholding removal and a cat claim. It was denied on the IJ level. At the time of the trial, his wife was four months pregnant. The petitioner did not have a qualifying relative to qualify for 42B. It was taken up on the BIA level, and basically, the petitioner filed a motion to remand and reopen. The BIA denied the motion to reopen. The petitioner basically had a prima facie showing of everything for 42B. The hardship was going to basically be talked about if the case was remanded back to the IJ. So we felt like that was an error on the BIA's part. What would have been the exceptional and extremely unusual hardship? Well, basically, we wanted to show that during trial. That's what we wanted to show. But to make that showing now, what would... What are you proffering would be the showing? That was something that we would have to plan about. Was it because of the fact that he was expecting a child or was there something different? Well, we're basically saying that the BIA erred and saying that he did not show prima facie evidence that he qualifies for 42B. Basically, he qualified for all of the elements. Doesn't he have to show extreme and unusual hardship? Yes, Your Honor. And we felt that the trial court should have basically have allowed us to go back and show that hardship. But what was the evidence that was presented? The evidence I presented was a birth certificate. Was what? A birth certificate. For the child? Yes. For the new child? Yes, Your Honor. But what was the evidence of extreme and unusual hardship? Because at least in the cases I've seen, merely having children born alone is not enough. No, it's certainly enough if a child has some kind of medical condition that could be treated in the U.S., but not in a country to which a parent would be removed. But the birth alone is not normally adequate. So what evidence of hardship did you present or can you tell us about now? None at the time, Your Honor, was presented. OK, thank you. So basically, during the trial level, the petitioner was never given a chance to basically state what his social group was. It was just basically taken by testimonial, and the judge just basically construed everything. And we felt like that was not fair. The case should have been remanded back to the BIA to delineate a particular social group. The last claim, basically, is that the client should have qualified for CAT. Because if he's sent back to Mexico, the record shows that he has evidence to prove that he'll be tortured. And the Mexican government would not do anything about it. Time, save the remaining for rebuttal. OK. Before you do that and sit down, let me ask you one question. What was the evidence that you contend is in the record showing that he would be likely tortured? The record indicates that he had tattoos and basically his grandmother's son was kidnapped five years ago. That's what the record reflects, Your Honor. And the Mexican government would not do anything about it. OK. Thank you, Counsel. You may reserve the rest of your time for rebuttal. Ms. Volkert. Can you hear me, Your Honor? I can hear you. Good afternoon. My name is Kathleen Volkert for the Attorney General. May it please the Court. I'll just address Petitioner's arguments first. In regards to the motion to remand before the Board, the Board did not abuse its discretion where the Petitioner presented no EEUH. That's exceptional. Exceptional, extremely unusual hardship. So the birth certificate alone shows that he has a qualifying relative, but that in and of itself is not enough. And the cases in this circuit and others support that you need to have tender some type of evidence showing that your qualifying relative may experience a exceptional, extremely unusual hardship. I just refer to it as EEUH to be easier. There was nothing presented. And even in Petitioner's opening brief, I believe it was page 16, he quotes the regulation that says that in order to show prima facie eligibility for hardship or any type of relief in a motion to remand or reopen, you need to bring forth all material evidence that supports your claim, including affidavits or any medical evidence would be included in that. And there just isn't anything submitted with that motion to remand. So as the Court knows, having a qualifying relative alone isn't enough to qualify for cancellation of removal. You need to show more. Secondly, the Board didn't abuse its discretion when it denied remand based on his allegation that the IJ, the PSG. So basically, the IJ is supposed to develop the record and ensure that it's a fulsome record, but it's the Petitioner's responsibility to put forth the evidence and the PSG that he's asserting. The immigration judge considers the evidence and includes the PSG from that evidence in the decision. And that's what was done here. Additionally, in that motion to remand before the Board, the Petitioner didn't even delineate what this PSG is that he claims the IJ erred by not asking for clarification. And I submitted a 28-J. It's an unpublished case. And excuse me if I mispronounce the name. It's Pletsy Pletsy. And I believe it was issued on December 17th, about two months ago, where a panel in the circuit said basically what we're arguing here is that Petitioner failed to identify the PSG, for which he alleges the IJ erred. Counsel, do you realize unpublished opinions are not precedent? Oh, absolutely, Your Honor. I do know that. I just thought it was very persuasive. I know you're not bound to follow it, but it's persuasive. I think, nonetheless, that it's basically cited to our board decision, WYC, as well, to support its finding. Ms. Volkert, I don't mean to interrupt your argument, but I do have one question on a topic you mentioned. I thought that he had contended that his protected social group was a group of like rich or perceived as rich Americanized Mexicans. And maybe I'm confusing this with a different case. I thought he had contended that if he went back, that he'd be perceived as rich and targeted. Similar to that, Your Honor, in his asylum application, I'll quote, it says, much of the fear of returning to a country I do not know is from my assimilation into American culture. I believe I will be targeted because of my inability to blend in. That's at AR446 and 447. And then, during his testimony, it basically, he was asked, so it sounds like your fear of returning to Mexico is because you've lived here your whole life. Does that sound right? And he said, yes, sir. And that's at AR319. Another point, why are you afraid to return to Mexico at AR301? In all honesty, because I've never been to Mexico. So I think when you look at the board decision and the groups that the IJ elicited from the evidence, so the IJ has to listen to the evidence and make sure that the evidence and the PSG are related, and then include that PSG in the decision. But I don't think anywhere the IJ is required to play some word game where there has to be a specific series of words in a specific series in an order. So the PSGs that the IJ elicited was returning Mexicans from the United States, and that's on page two of the board decision. And the immigration judge also, here's another point I wanted to bring up. He didn't include his uncle's disappearance in the application, but because of the testimony, the IJ picked that out too and considered a family group with the uncle as well. So I mean, I go back, Your Honor, to, I know it's an unpublished decision, but a panel in this court just said that a petitioner who is asking for remand, who fails to identify the PSG for which he alleges the IJ erred, to seek clarification, the board doesn't abuse its discretion by denying remand. Counsel, what's your best presidential case, like a Ninth Circuit case or Supreme Court case that supports your position? Drawing a blank here. So, Counsel, do you lose if we don't agree with you that the unpublished disposition is persuasive? Do you lose? So if you don't find the unpublished decision persuasive, I don't think we per se lose, because when you look to our board decision, it does not say, when I say the board decision, W-Y-C-H-O-B, it says, it stands for two premises. So basically, the petitioner has to articulate the PSG, and you can't raise a new PSG before the board for the first time. And so the IJ has a responsibility to develop the record, ensure the record is fulsome, but it's really upon the petitioner to articulate or bring the evidence for the PSG. And if the IJ is confused, then the IJ can seek clarification, but there's nothing in the record that shows that the IJ was confused, and there's really no evidence in the record that supports a different PSG than the ones that the IJ considered. Additionally, I want to also point out for you, too, which I didn't put in my brief, but I found it, and I thought it was pretty noteworthy. At the end of the hearing, the IJ asks, I think it's 324, 325, the IJ says, I'm going to give the oral decision, gives the oral decision, comes back on the record, and then asks, if there's nothing further, I'm going to close the hearing. At that point, petitioners counseled. There was no objection to the PSGs, the particular social groups that the immigration judge spoke of in his oral decision. And I think that's important because at that point, if there was any problem or concern, I think that that's an appropriate time for counsel to have objected. Counsel, in response to Judge Gould's question, are you saying that you don't have a Ninth Circuit case that supports your argument? No. You just can't remember it? Yeah, I'm blanking right now. I apologize. I think I had the Han Sheriff case, which that was really, you can't bring a PSG for the first time. So you came here prepared to rely on an unpublished disposition? No, Your Honor. It sure looks like that, but that's not what I intended to do. I apologize. I would be happy to file a 28-J after the argument, if you'd permit me. I don't need one. I was just curious as to when you prepared for this argument, it would seem that you would have had the cases to support your argument. Oh, no, I agree with you, Your Honor. I think with the unpublished decision, I thought that was a pretty good decision there that the panel just decided two months ago. And I'm just blanking out. And I really apologize. Well, we'll read your briefing carefully. We'll look at the precedents your brief cites to and the precedents that the board cited to. I'm sure we can put our fingers on what we think is controlling. Thank you, Your Honor. Your Honor, can I just have one, maybe less than a minute, to just address the cat? Okay, go ahead. The government maintains that substantial evidence supports the board's decision denying cat. There's no evidence in the record that the uncle was actually kidnapped or that the police wouldn't have been involved, wouldn't have helped. The petitioner doesn't really know any details about his uncle's disappearance. And there's no evidence of prior harm in Mexico. And I filed a 28-J of a published decision of Ruiz-Colmenares that was issued two weeks ago that supports our case. And that's all. Thank you, Your Honor. Thank you. We'll return to Mr. Christian for his rebuttal. Thank you, Your Honor. The government does have a precedent case. So basically, the court should decide, give it a petitioner. The judge, he did not try to develop a social group. You know, he didn't ask the petitioner specifically what the social group was. So therefore, the case should be remanded. As far as to the 42B claim. Well, Mr. Christian, did anything prevent the petitioner from presenting evidence at that hearing or identifying a protected social group? He was just never given the opportunity to say it. So thank you, Your Honor. No further. But before that hearing, did the petitioner file a brief? No, Your Honor. Okay. Thank you. I appreciate the arguments on both sides of the case. And the advocates, again, have our thanks for appearing remotely during these times and for helping us out on the argument. The Ramirez-Barragan case shall now be submitted. And the parties will hear from us in due course. Thank you. Thank you, Your Honor. The next case on our docket.
judges: GOULD, RAWLINSON, Zipps